## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 16 2017, 11:08 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer L. Koethe
La Porte, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Diane Haas, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Michael Carpenter, <br> *Appellee-Defendant.* | May 16, 2017 <br><br> Court of Appeals Case No. <br> 46A04-1610-SC-2437 <br><br> Appeal from the La Porte Superior Court <br><br> The Honorable Jeffrey Thorne, Judge <br><br> Trial Court Cause No. <br> 46D03-1606-SC-1230 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Plaintiff, Diane Haas (Haas), appeals the small claims court's judgment in this landlord-tenant dispute with Appellee-Defendant, Michael Carpenter (Carpenter).

We affirm.

# ISSUE

Haas presents us with one issue on appeal, which we restate as: Whether the small claims court erred in its damage award as a result of a bed bug infestation in a multi-unit apartment complex.

# FACTS AND PROCEDURAL HISTORY

Haas is the owner of real estate, consisting of four separate apartments, located in LaPorte, Indiana. In November 2014, Haas, as the landlord, entered into a lease agreement pursuant to which Carpenter agreed to lease apartment #3. Carpenter paid a security deposit of $600.00. Tenants in good standing "as far as paying rent," have the first option to move into a larger apartment when one becomes available. (Transcript p. 6). Accordingly, on August 1, 2015, Carpenter entered into a new lease with Haas, pursuant to which Carpenter agreed to lease apartment #2 for a "bimonthly" rent of $650. (Plaintiff's Exh. 5, p.1). The $600.00 security deposit was assigned from the lease of apartment #3 to the lease of apartment #2. The terms of the lease provided, in pertinent part, that Carpenter "shall comply with all the sanitary laws, ordinances, rules and orders of appropriate governmental authorities affecting the cleanliness,

occupancy, and preservation of the premises[.]" (Plaintiff's Exh. 5, p. 2). On March 1, 2016, Haas and Carpenter entered into a new lease agreement by which Carpenter rented from Haas apartment #1. The original $600.00 security deposit applied to the rent of apartment #3 and assigned to #2 was then transferred to the rent of apartment #1.

[5] During the move from apartment #2 to apartment #1, Haas talked with Carpenter "to see how things were going." (Tr. p. 8). Carpenter mentioned that he was going to the Goodwill Store and Haas cautioned him because "it's been known that they have had bed bugs and any furniture, bedding, anything like that, even clothing, has to be laundered – or washed down." (Tr. p. 8). Carpenter replied that he knew "all about that" because he had had bed bugs in apartment #2 since December 2015. According to Carpenter, Carpenter's friend who had been renting the basement apartment might have brought the bed bugs in the building. As his friend had visited with him in apartment #2, the bed bugs transferred to apartment #2 as well. Carpenter did not see the bed bugs "personally;" his wife "was the only one getting bitten. [His] son was not getting bitten. Neither was [his] father." (Tr. p. 31). Haas had a professional company, Hatfield Pest Control (Hatfield), inspect the building and treat it for bed bugs. Carpenter moved out of the building at the end of June 2016.

[6] On June 20, 2016, Haas filed a Complaint in the small claims court, seeking "[l]oss of rents, failure to provide notice of bed bugs, 3 months clean up apt.#2 in an amount to be determined, as well as costs of the proceeding." (Appellant's App. Vol. II, p. 4). On August 12, 2016, the small claims court

conducted a bench trial and issued the following judgment on August 17, 2016, providing, in pertinent part:

> 7. HAAS never sought to recover any damages from CARPENTER relative to his occupancy of apartment #3 in the SUBJECT PREMISES.

> 8. Only after CARPENTER vacated occupancy of apartment #1 of the SUBJECT PREMISES did HAAS seek reimbursement for any damages relative to CARPENTER'S occupancy in apartment #2 at the SUBJECT PREMISES.

> 9. CARPENTER'S Exhibit 'B', a document entitled "PREMISES INSPECTION MOVE-IN/MOVE-OUT" showed that as of August 1, 2015 there were numerous matters that needed repair or cleaning relative to apartment #2 at the SUBJECT PREMISES.

> 10. No such Premises Inspection Document was prepared by the parties when CARPENTER took possession of apartment #1 of the SUBJECT PREMISES in March 2016.

> 11. The [c]ourt awards HAAS a total of $250.00 for various repairs and/or maintenance above and beyond normal wear and tear relative to CARPENTER'S occupation of apartments 3, 2, and 1 in the SUBJECT PREMISES.

> 12. In March 2016, HAAS incurred expenses with [Hatfield] for an inspection and treatment of all four (4) apartments in the SUBJECT PREMISES for an infestation of bed bugs which expenses totaled 3,075.00.

> 13. As bed bugs were found in at least two (2) of the apartments at the SUBJECT PREMISES, HAAS has been unable to

establish that CARPENTER was the original source of the bed bug infestation. Therefore, the [c]ourt finds that CARPENTER should be responsible for only $768.75 of said expenses.

14. The [c]ourt denied HAAS' request that damages incurred by HAAS for loss of rent for apartments 2 and 4 should be assessed against CARPENTER since it has not been established that CARPENTER was the true source of the bed bug infestation.

15. CARPENTER is entitled to a credit against the aforementioned damages in the amount $600.00 representing the damages deposit paid.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that judgment be entered in favor of Plaintiff, DIANE HAAS, and against defendant, MICHAEL CARPENTER, in the amount of $418.75 plus costs of the action in the amount of $132.00 for a total of $550.75 plus interest from the date of judgment at the rate of 8% per annum.

(Appellant's App. Vol. II, pp. 8-9).

Haas now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

Haas contends that the small claims court abused its discretion by failing to award her the total cost for the bed bug remediation at the apartment complex and for the loss of rent in the amount of $2,300.00.

Judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). Under

Indiana Trial Rule 52(A), the clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. This "deferential standard of review is particularly important in small claims actions, where trials are 'informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law.'" *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1067-68 (Ind. 2006) (citing *City of Dunkirk Water & Sewage Dep't v. Hall*, 657 N.E.2d 115, 116 (Ind. 1995)). But this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction. *Trinity Homes, LLC*, 848 N.E.2d 1068. Parties in a small claims court bear the same burdens of proof as they would in a regular civil action on the same issues. *Hastetter v. Fetter Properties, LLC*, 873 N.E.2d 679, 682 (Ind. Ct. App. 2007). We consider evidence in the light most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. *Id.*

[10] Initially, we observe that Carpenter has not filed an appellate brief. When the appellee has failed to submit an answer brief we need not undertake the burden of developing an argument on the appellee's behalf. *Trinity Homes, LLC,* 848 N.E.2d at 1068. Rather, we will reverse the small claims court's judgment if the appellant's brief presents a case of *prima facie* error. *Id. Prima facie* error in this context is defined as, "at first sight, on first appearance, or on the face of it." *Id.* Where an appellant is unable to meet this burden, we will affirm. *Id.*

## I. *Bed Bug Treatment Costs*

Pursuant to Section Two of the agreement to lease apartment #2, Carpenter

> shall comply with all the sanitary laws, ordinances, rules and orders of appropriate governmental authorities affecting the cleanliness, occupancy, and preservation of the premises, . . ., during the term of this lease.

(Plaintiff's Exh. #5, p. 2). Relying on Indiana Code § 32-31-7-6[1] and the City of LaPorte Ordinance, Haas advocates for the application of Section 10-446, dealing with extermination, which states:

> (a) *Infestation*. All structures shall be kept free from insect and rodent infestation. All structures [in]which insects and rodents are found shall be promptly exterminated by approved processes that will not be injurious to human health. After extermination, proper precautions shall be taken to prevent re-infestation.
>
> (b) *Owner*. The owner of any structure shall be responsible for extermination within the structure prior to renting or leasing the structure.
>
> (c) *Single occupant*. The occupant of a one-family dwelling or of a single-tenant nonresidential structure shall be responsible for extermination on the premises.
>
> (d) *Multiple occupancy*. The owner of a structure containing two or more dwelling units, a multiple occupancy, a rooming

---

[1] Indiana Code § 32-31-7-6 provides that "[a]t the termination of a tenant's occupancy, the tenant shall deliver the rental premises to the landlord in a clean and proper condition, excepting ordinary wear and tear expected in the normal course of habitation of a dwelling unit."

house or a nonresidential structure shall be responsible for extermination in the public or shared areas of the structure and exterior property. If infestation is caused by failure of an occupant to prevent such infestation in the area occupied, the occupants shall be responsible for extermination.

(e) *Occupant*. The occupant of any structure shall be responsible for the continued rodent and pest-free condition of the structure.

*Exception*: Where the infestations are caused by defects in the structure, the owner shall be responsible for extermination.

(Appellant's App. Vol. II, p. 17). Based on this provision of the City of LaPorte Ordinance, Haas contends that "[o]nce [Carpenter] failed to comply with the Ordinance, by failing to treat the infestation, the entire four-unit apartment was exposed and was required to be treated." (Appellant's Br. p. 11). Accordingly, Haas requests this court to grant her the full cost of the bed bug treatment, *i.e.*, $3,075.00.

[12] Interpretation of an ordinance is subject to the same rules that govern the construction of a state statute. *Mint Mgmt., LLC v. City of Richmond*, 69 N.E.3d 561, 565 (Ind. Ct. App. 2017) (quoting *Rollet Family Farms, LLC v. Area Plan Comm'n of Evansville-Vanderburgh Cty.*, 994 N.E.2d 734, 738 (Ind. Ct. App. 2013)). Words are to be given their plain, ordinary, and usual meaning, unless a contrary purpose is shown by the statute or ordinance itself. *Mint Mgmt., LLC*, 69 N.E.3d at 565. Where possible, every word must be given effect and

meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute. *Id.* The goal in statutory construction is to determine and effect legislative intent. *Id.* Courts must give deference to such intent whenever possible. *Id.* Thus, courts must consider the goals of the statute, and the reasons and policy underlying the statute's enactment. *Id.* If the legislative intent is clear from the language of the statute, the language prevails and will be given effect. *Id.*

[13] The evidence reflects that while Carpenter was moving from apartment #2 to apartment #1, he mentioned to Haas that he had had bed bugs in apartment #2 since December 2015. At the hearing, Carpenter clarified that Carpenter's friend, who had been renting the basement apartment, might have brought the bed bugs into the building. As his friend had visited apartment #2, the bed bugs might have transferred into Carpenter's apartment during that visit. An inspection by Hatfield revealed the existence of bed bugs in the "basement apartment and in [a]partment # 2." (Tr. p. 8). All four apartments in the building were treated for a bed bug infestation. In its judgment, the small claims court only allocated 1/4th of the total cost of the remediation to Carpenter.

[14] With regard to multiple occupancy, the City of LaPorte ordinance provides that an occupant is responsible "to prevent such infestation in the area occupied." (Appellant's App. Vol. II, p. 17). At the moment Haas became aware of the bed bug infestation, Carpenter had only occupied apartment #2, where Hatfield's inspection confirmed the presence of bed bugs. Haas did not

introduce any evidence contradicting Carpenter's testimony that the bed bugs originated with the occupant of the basement apartment. Therefore, the small claims court did not abuse its discretion in awarding Haas only $768.75, or 1/4th of the bed bug remediation expenses.

## II. *Loss of Rent*

Haas claims that "[a]s a result of [Carpenter's] failure to comply with LaPorte Ordinance Section 10-466 (a), (d) and (c), [Haas] incurred . . . loss of rent in the amount of $2300.00." (Appellant's Br. p. 11). Specifically, Haas' loss of rent request includes two months of rent respectively for apartment #2 and the basement apartment.

Generally, a party injured by a breach of contract may receive consequential damages. *Johnson v. Scandia Assocs.*, 717 N.E.2d 24, 31 (Ind. 1999). Consequential damages may be awarded on a breach of contract claim when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made. *Id*. "This follows the rule announced in *Hadley v. Baxendale*, 156 Eng. Rep. 145 (1854), and generally limits consequential damages to reasonably foreseeable economic losses." *Indianapolis City Market Corp. v. MAV, Inc.*, 915 N.E.2d 1013, 1024 (Ind. Ct. App. 2009). A factfinder may not award damages on the mere basis of conjecture or speculation. *Id*.

However, because we found Carpenter contractually responsible for the bed bug infestation in apartment #2, Haas' consequential damages, if any, are limited to

the loss of rent of apartment #2. Haas claims that the apartment could not be rented while Hatfield was treating the building for the infestation. Evidence deduced at the hearing indicates that Haas showed apartment #2 to a potential tenant, who was aware of the bed bug infestation. When Haas and the potential tenant "went through the apartment and she saw the actual condition and the condition of the back yard, she said no I'm not gonna do it." (Tr. p. 18). When receiving this testimony, the small claims court opined that "Well, then it wasn't uninhabitable. [] [T]he backyard caused this person not to rent it." (Tr. p. 18). Furthermore, while the treatment against bed bugs was being applied, Haas admitted that tenants were living in apartment #1 and #3.

[18] In light of the evidence that tenants were living in two of the four apartments while the building was being treated for bed bugs and the evidence that apartment #2 could have been rented if the backyard had been in better condition, Haas did not establish that her loss of rent of apartment #2 was a result of the bed bug infestation. Moreover, even though the lease agreement entered into between Carpenter and Haas for apartment #2 includes a provision to mandate the compliance with "the sanitary laws, ordinances, rules and orders of appropriate governmental authorities[,]" the provision is silent with respect to damages in the event of noncompliance. (Plaintiff's Exh. #5, p. 2); *see Johnson*, 717 N.E.2d at 31 (consequential damages must be contemplated by the parties when entering into the contract). Accordingly, we affirm the small claims court's denial of Haas' request to award her loss of rent.

# CONCLUSION

[19] Based on the foregoing, we hold that the small claims court did not err in its damage award as a result of a bed bug infestation in a multi-unit apartment complex.

[20] Affirmed.

[21] Najam, J. and Bradford, J. concur